UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ROBERT J. HAGGERTY,

                Plaintiff,

     -vs-                                                 05-CV-0329-C

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

---

Plaintiff Robert J. Haggerty initiated this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security (the "Commissioner") denying his application for Social Security disability insurance ("SSDI") benefits. The Commissioner has filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Item 7), and plaintiff has filed a cross-motion for summary judgment pursuant to Fed. R. Civ. P. 56 (Item 11). For the following reasons, the Commissioner's motion is denied, and plaintiff's motion is granted in part and denied in part.

## **BACKGROUND**

Plaintiff was born on August 21, 1947 (T. 165).[1] He applied for SSDI benefits on June 16, 2000, with an alleged disability onset date of May 4, 2000 (T.165). Plaintiff alleges that he is disabled due to shoulder impairment and pain (T. 177). Plaintiff's application was denied initially on August 21, 2000 (T. 121-23) and upon reconsideration

---

[1] References preceded by "T." are to page numbers of the transcript of the administrative record, filed by defendant as part of the answer to the complaint.

on November 13, 2000 (T. 125-27). Plaintiff requested a hearing, which was held on March 7, 2002 before Administrative Law Judge ("ALJ") Bruce R. Mazzarella (T. 39-117). Plaintiff testified and was represented by counsel at the hearing. Timothy P. Janikowski, Ph.D., a vocational expert, also testified at the hearing.

The ALJ issued his decision on November 26, 2003, finding that plaintiff was not entitled to SSDI benefits (T. 26-36). Following the sequential evaluation process outlined in the Social Security Administration regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ reviewed the medical evidence and determined that plaintiff's impairments (including chronic bilateral shoulder pain with use status post arthroscopic surgeries and mild asthma), while severe, did not meet or equal the criteria of an impairment listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ considered plaintiff's allegations and testimony regarding the disabling nature of his impairments, but found plaintiff to be "not totally credible" in this regard (T. 35). Finally, the ALJ determined that plaintiff had the residual functional capacity for the full range of sedentary work[2] which, when considered along with plaintiff's age (56 at the time of the

---

[2]"Sedentary work" is defined in the Commissioner's regulations as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R §§ 404.1567(a), 416.967(a). According to Social Security Ruling ("SSR") 83-10:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more

decision), educational background (high school graduate), work experience (skilled work as owner and manager of a retail clothing store), and the testimony of the vocational expert, rendered plaintiff "capable of making a vocational adjustment to other jobs existing in significant numbers in the national economy" (T. 35), and required a finding that plaintiff was not disabled within the meaning of the Social Security Act.  The ALJ's decision became the Commissioner's final determination on March 25, 2005, when the Appeals Council denied plaintiff's request for review (T. 7-10).

On May 10, 2005, plaintiff instituted this action seeking judicial review of the Commissioner's final determination (Item 1).  On December 23, 2005, the Commissioner moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure seeking an order affirming the ALJ's decision as supported by substantial evidence.  In response, plaintiff filed a cross-motion for summary judgment pursuant to Fed. R. Civ. P. 56, seeking reversal of the Commissioner's determination on the basis that the ALJ and Appeals Council erred in (1) rejecting the expert medical opinion of plaintiff's treating physicians, (2) finding plaintiff's testimony not credible, (3) evaluating the combined effect of plaintiff's impairments, and (4) finding that plaintiff could perform sedentary work (Item 11).

For the reasons that follow, plaintiff's motion for summary judgment is granted to the extent it seeks relief based on the Commissioner's error in evaluating the evidence provided by plaintiff's treating physicians.

---

than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.  Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

## DISCUSSION

**I.     Scope of Judicial Review**

The Social Security Act states that upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).  Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-72 (2d Cir. 1999).  Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try a case *de novo* or substitute its findings for those of the Commissioner.  *Richardson*, 402 U.S. at 401.  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1141 (E.D.Wis. 1976), *quoted in Gartmann v. Secretary of Health and Human Services*, 633 F. Supp. 671, 680 (E.D.N.Y. 1986).  The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence.  *Tejada*, 167 F.3d at 773.

## II.     Standard for Determining Eligibility for Disability Benefits

To be eligible for disability insurance benefits under the Social Security Act, plaintiff must show that he suffers from a medically determinable physical or mental impairment of such severity that he is unable to engage in substantial gainful activity given his age, education, and work experience.  42 U.S.C. § 423(d); 20 C.F.R. § 404.1505(a).  Plaintiff must also establish that he became disabled before the expiration of the period during which he was insured for disability insurance benefits.  See 42 U.S.C. §§ 423(a)(1)(A), 423(c)(1); see also 20 C.F.R. §§ 404.103, 404.315(a); Arnone v. Bowen, 882 F.2d 34, 37-38 (2d Cir. 1989); Vitale v. Apfel, 49 F. Supp. 2d 137, 142 (E.D.N.Y. 1999) (plaintiff seeking disability benefits for past term of disability must prove he became disabled before expiration of insured status).

The regulations set forth a five-step process for the ALJ to follow in evaluating disability claims.  See 20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ."  20 C.F.R. § 404.1520(c).  If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past relevant work.  Finally, if the claimant is

not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing other work which exists in the national economy, considering the claimant's age, education, past work experience, and residual functional capacity. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari*, 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). The Commissioner ordinarily meets her burden at the fifth step by resorting to the medical vocational guidelines set forth at 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "Grids"). The Grids are designed to take into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience, to indicate whether the claimant can engage in any substantial gainful work existing in the national economy by. *Id.* at 78; *see also Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996). However, where the Grids fail to describe the full extent of a claimant's physical limitations, the ALJ must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).

In this case, the ALJ determined that plaintiff had not engaged in substantial gainful activity since his alleged disability onset date on August 21, 2000 (T. 27). Upon reviewing plaintiff's medical records the ALJ found that the plaintiff suffered from chronic bilateral shoulder pain with use status post arthroscopic surgeries and mild asthma which, while

"severe," did not individually or in combination meet or equal the requirements of the Listings (T. 28).

Proceeding to the fourth step of the evaluation process, the ALJ determined that plaintiff's impairments prevented him from performing his past relevant work as an owner-manager of a retail clothing store, described by plaintiff as skilled work with a light-to-medium level of exertion (T. 34).  At this point, the burden shifted to the Commissioner to show that there are other jobs existing in significant numbers in the national economy that plaintiff could perform, considering his residual functional capacity in conjunction with his age, education, and work experience.

In this regard, the ALJ first found that plaintiff retained the residual functional capacity to perform the full range of sedentary work (*see* note 2, *infra*), citing the substantial medical evidence in the record provided by plaintiff's treating sources, including Dr. Paul Lapoint (T. 386-94; 423-26).  The ALJ also relied on a functional capacity evaluation ("FCE") conducted by physical therapist Brad Austin on April 17, 2002 (after the March 2002 hearing) (T. 432-44), as well as a post-hearing consultative evaluation performed by Dr. Murli Agrawal (T. 445-52).  The ALJ then utilized the services of the vocational expert to determine whether plaintiff could perform other jobs in the economy given his residual functional capacity for sedentary work, his transferable skills from past relevant work, his age and his education.  The vocational expert found that plaintiff could perform jobs which existed in substantial numbers regionally and nationally such as personnel clerk, payroll clerk, cashier, and bookkeeper (T. 34).

Plaintiff contends that in finding that plaintiff retained the residual functional capacity to do the full range of sedentary work (upon which the vocational expert relied in finding

that there were jobs plaintiff could perform), the ALJ erroneously rejected the opinion and findings of plaintiff's treating physician, Dr. Lapoint, as well as the findings of the consultative physician, Dr. Agrawal, which indicate that plaintiff was unable to engage in substantial gainful activity since May 4, 2000.  What follows is the court's assessment of this contention in light of the rules which the Commissioner must follow in evaluating treating source evidence, as set forth in the regulations and controlling case law.

### III.     Evaluation of Treating Physicians' Opinions

The Social Security regulations require that the opinion of a claimant's treating physician which reflects judgments about the nature and severity of the claimant's impairments be given "controlling weight" by the ALJ, as long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ." 20 C.F.R. § 404.1527(d)(2); *see also Rosa*, 168 F.3d at 78-79.  If the opinion of the treating physician as to the nature and severity of the claimant's impairment is not given controlling weight, the regulations require the ALJ to apply several factors to decide how much weight to give the opinion, including: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Clark v. Commissioner of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).  The ALJ must "always give good reasons" in the notice of determination or decision for the weight given to the treating source's opinion, 20 C.F.R. § 404.1527(d)(2), and "cannot arbitrarily

substitute his own judgment for competent medical opinion." *Rosa*, 168 F.3d at 79; *see also Rooney v. Apfel*, 160 F. Supp. 2d 454, 465 (E.D.N.Y. August 14, 2001).

As explained by the Social Security Administration, when the ALJ's determination:

is not fully favorable, *e.g.*, is a denial . . .

. . .

the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996)

In this case, the record indicates that Dr. Lapoint saw plaintiff on a regular basis beginning in August 1998, when he performed a surgical procedure on plaintiff's right shoulder consisting of arthroscopy, extensive debridement of superior labral tear, extensive subacromial bursectomy, and acromioplasty (T. 28, 233). On December 10, 2001, Dr. Lapoint examined plaintiff and completed a form captioned, "Medical Evaluation for the Period Beginning 5/4/00" (T. 425-25). Dr. Lapoint reported that as a result of bilateral shoulder pain with impingement syndrome, plaintiff could lift or carry no more than five pounds, stand or walk for only one-half hour during an eight-hour day, and sit for 8 hours. He needed four 15-minute rest periods. Dr. Lapoint indicated on the medical evaluation form that plaintiff had remained unable to engage in substantial gainful activity since May 4, 2000 (T. 425). Dr. Lapoint further stated that plaintiff's physical findings had remained "static" since his initial injury (T. 426). Physical examination on December 10, 2001 "revealed great difficulty with any abduction of either shoulder past 90 degrees. He has significant weakness in all planes of rotator cuff testing. He remains neurovascularly

intact but he has shoulder fatigue with any repetitive use of the hands or elbows" (*id.*).  Dr. Lapoint reported plaintiff's work status as follows:

> We have had a long discussion about his ability to perform certain work activities.  He has explained to me that he has difficulty with the use of computers and repetitive hand use secondary to pain in the shoulders which develops over time.  He has difficulty with prolonged walking due to the swinging of his arms and shoulder pain.  He cannot lift more than 5 lbs. over his head with either shoulder without producing significant pain.  This greatly limits his ability to find any gainful employment.  PRESENTLY, I AM RECOMMENDING THAT HE REMAIN DISABLED.

(*Id.*).

Clearly, this evaluation reflects the judgments of plaintiff's treating physician about the nature and severity of plaintiff's impairments as of December 2001.  However, ALJ Mazzarella did not give controlling weight to these findings.  Indeed, it is evident from the court's reading of the ALJ's decision that the findings and opinions expressed by Dr. Lapoint in this evaluation were given very little weight, if any, in the disability determination.  Rather, the ALJ found that the functional limitations listed by Dr. Lapoint were based on plaintiff's "subjective complaints" made during the December 10, 2001 visit, and were inconsistent with Dr. Lapoint's earlier reports as well as the functional capacity evaluation conducted by the physical therapist in April 2002.  The ALJ did not provide any further explanation of the inconsistencies he found, nor did he indicate whether he had considered any of the factors outlined in the regulations–particularly, the frequency of Dr. Lapoint's examination of plaintiff and the length, nature, and extent of their treatment relationship.  As outlined above, Dr. Lapoint had performed the arthroscopic surgery on both of plaintiff's shoulders and had monitored his condition on a regular basis since the first arthroscopy in August 1998.  Considered as a whole, the medical evidence in the record before the ALJ

could support the conclusion that Dr. Lapoint, an orthopedic surgeon, had obtained reasonable knowledge of plaintiff's impairments as they related to his area of specialty based on his treatment and evaluation of plaintiff "a number of times and long enough to have obtained a longitudinal picture of [his] impairment . . . ." 20 C.F.R. § 404.1527(d)(2)(i).

Moreover, Dr. Lapoint's conclusions find support in the consultative report of Dr. Agrawal, who examined plaintiff on June 3, 2002 at the request of the ALJ.  Dr. Agrawal found that plaintiff's impairments resulting from his history of arthroscopic surgery on both shoulders, left shoulder rotator cuff injury, right shoulder tendinitis, and lumbar osteoarthritis limited him to lifting or carrying less than ten pounds, standing or walking for at least two hours but less than six hours in an eight-hour work day, and sitting for less than six hours in an eight-hour work day (T. 447-50).  The ALJ gave this evidence "very little weight" based on what he perceived as an inconsistency with Dr. Agrawal's indication in his narrative that plaintiff "could sit without any problem" (Tr. 32).  Instead, the ALJ gave "great weight" to the FCE prepared by the physical therapist since it represented "an evaluation of actual capability in spite of subjective complaints" (*id.*).

However, the regulations are clear that physical therapists are not considered "acceptable medical source[s]" like "[l]icensed physicians . . .[,] [l]icensed or certified psychologists[,] . . . [l]icensed optometrists, . . . [l]icensed podiatrists, . . . and [q]ualified speech language pathologists," 20 C.F.R. § 404.1513(a).  Rather, physical therapists are considered "other sources" that may offer evidence, 20 C.F.R. § 404.1513(d), but that evidence is "entitled to significantly less weight" than the weight to be accorded to medical evidence offered by treating sources.  *Seilheimer v. Massanari*, 2001 WL 664456, at *7 (N.D.Ill. 2001) (citing *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996)).

Considering the history of plaintiff's treatment relationship with Dr. Lapoint as documented in the administrative record, and in light of the supporting evidence provided by the report of Dr. Agrawal, this court's reading of the Social Security regulations and interpretive rulings indicates a duty on the part of the ALJ to more fully explain his reasons for rejecting Dr. Lapoint's judgment about the nature and severity of plaintiff's impairments. As set forth in SSR 96-2p, because he denied plaintiff's application, the ALJ was required to give specific reasons, supported by the evidence in the case record, for the weight he gave to the treating source's medical opinion, in a manner clear to subsequent reviewers (including this court).  He did not do so.

Accordingly, the court finds that the Commissioner's determination was based on an erroneous view of the law that improperly disregarded highly probative evidence and cannot be upheld.  *Tejada*, 167 F.3d at 773.[3]

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is denied. Plaintiff's cross-motion for summary judgment is granted to the extent it seeks relief based on the Commissioner's failure to properly assess the evidence provided by plaintiff's treating physicians. This case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. 405(g) for further proceedings consistent with this opinion.

---

[3] Because the court is directing remand based on the Commissioner's failure to properly consider treating source evidence, there is no need to address plaintiff's remaining contentions of error.

So ordered.

                          \s\ John T. Curtin
                          JOHN T. CURTIN
                          United States District Judge

Dated: November 6, 2006

p:\opinions\05-329.nov206